Harel Leon YOCUM, Appellant,

v.

KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Respondent.

No. 48140.

Supreme Court of Missouri,

Division No. 1.

Sept. 11, 1961.

Motion for Rehearing or for Transfer to Court en Banc Denied Oct. 9, 1961.

A. J. Falcone, Kansas City, for appellant.

Howell & Sanders, Robert J. Sanders, Robert G. Jones, Kansas City, for respondent.

HOLLINGSWORTH, Judge.

In Kansas City, on September 23, 1957, at 5:30 p.m., plaintiff, while operating a motor truck northward on Grand Avenue, undertook to make a right turn into a private driveway, during the course of which the truck was struck from the rear by defendant's northbound motorbus. Plaintiff was injured and brought this action against defendant in which he sought damages in the sum of $35,000. Trial to a jury resulted in a verdict and judgment in favor of defendant, from which judgment plaintiff has appealed. The sole ground of error assigned is the admission into evidence, over objection of plaintiff, of the opinion of a duly qualified expert, predicated upon certain hypothesized facts shown in evidence, that the collision could not have occurred in the manner asserted by plaintiff. A brief statement of the essential portions of the evidence is necessary.

Grand Avenue, extending in a general north-south direction, is 62 feet in width along the portion thereof at which the collision occurred, affording sufficient width for three lanes of traffic in each direction. However, motor vehicles are permitted to be and sometimes are parked along each of the curb lanes. The private driveway involved is at or near 2505 Grand. It is 23 feet in width and extends eastward to a loading dock located 75 feet east of Grand.

Plaintiff, an employee of Bos Freight Lines, was operating a 1955 model, series 160, one and one-half ton, cab-over-engine International truck, with a van-type body. A narrow loading and unloading platform, sometimes referred to as a "tailgate", extended back from the level of the bed of the van-type body.

Plaintiff testified: He was travelling at 20 to 25 miles an hour as he drove northward on Grand and approached the driveway. When he reached a point 150–200 feet south of the driveway, he adjusted the directional signal on the truck to indicate a right turn. At that time the right side of the truck was 10 to 12 feet from the east curbline of Grand. When he was 75 feet south of the driveway, he looked into the rearview mirrors. Seeing no vehicle approaching from his rear, he veered his vehicle to within about 8 feet of the east curb, slowed its speed to 8 to 10 miles an hour and started his turn into the driveway from a point 15 to 20 feet south of the driveway entrance. When the front of the truck was within about 3 feet east of the driveway entrance, defendant's bus struck the rear end thereof. The truck had moved about 10 feet in the course of its right turn when it was struck.

Two other persons testified in behalf of plaintiff that they were eyewitnesses to the collision. The general tenor of their testimony was that as the truck approached the driveway cars were parked in the east curb lane; that the truck, travelling at a slow speed, was 4 to 8 feet out from the curb; that, although plaintiff had testified he did not see defendant's bus when he looked from his rearview mirrors prior to

beginning his right turn, defendant's bus, travelling at a faster rate of speed than the truck, was in fact about 5 to 8 feet directly to the rear of the truck and "gaining on" it; and that the bus neither sounded any warning, stopped or swerved prior to the impact. Alfred L. Ferguson, a corporal in the investigation unit of the Kansas City Police Department, also testified in behalf of plaintiff. After identifying skid marks shown on a photograph taken by him at the scene, he stated that they began approximately 12 feet west of the east curb of Grand and had been made by the sideward movement of the rear dual wheels of the truck; that dirt in the street showed where the impact occurred; that the truck travelled 34 feet north of the point of impact; and that the bus had made no skid marks before the impact.

Defendant's bus operator, corroborated by two of his passengers, testified in behalf of defendant to the effect: He was operating a passenger bus, 8 feet wide and 35 feet long, northward on Grand. Ever since turning northward on Grand (apparently more than one block) he had been aware of the northbound truck in front of him. It was in the lane of traffic to the left of the lane in which the bus was proceeding. Both were travelling at about 20 miles per hour. There were no cars parked on the east curb lane of Grand for a distance of several hundred feet south of the driveway at 2505. As the truck and bus moved northward toward the driveway, the bus was within about 3 feet of the east curb and the truck, 10 to 12 feet in front of the bus, was in the lane to the left of the bus. While the vehicles were in those relative positions, the truck, without noticeable change in speed or visible display of any turning signal, suddenly turned to the right in front of the bus and the collision instantly ensued. The left front portion of the bus struck the right rear end of the loading platform or tailgate of the truck. (There is no controversy as to the points of contact between the vehicles; photographs taken at the scene and introduced into evidence by plaintiff show them to be located as testified by defendant's operator.)

This brings us to the testimony of defendant's witness, Winfield C. Packer, which plaintiff asserts was erroneously admitted. This witness, a graduate engineer, testified: He took photographs and made measurements of the truck driven by plaintiff. The width of the truck was 6 feet, 7 inches, the length was 22 feet, 4 inches, including a little platform protruding from its rear. The "turning radius" of a vehicle is the forward motion and the lateral motion required to make a right angle turn. In this truck, it is 27 feet. This is to say that, in the case of this truck, the minimum distance it can move forward in making a right angle turn is 27 feet. The distance that the vehicle moves is considerably more because it is following the quadrant of a circle. Viewing the plat introduced into evidence by plaintiff and assuming that the truck was aligned by plaintiff so that the center of the truck would enter the center of the driveway, the witness charted thereon the two courses the truck could follow from the time it began its turn, each charted course being based upon the minimum and maximum distances at which plaintiff estimated he began his turn from Grand into the driveway, to wit: 15 to 20 feet south of the entrance thereto. The witness also outlined upon the plat the varying positions and angles in which the rear end of the truck would proceed during the course of its right turn, following which, by the use of small models of motor vehicles, the witness manually demonstrated that the vehicles could not have come into contact at the point shown on the photographs had the bus been directly in the rear of the truck. (The visual purport of considerable portions of the demonstrations thus given by the witness cannot be ascertained from the record.) The witness, over objection of plaintiff, further testified as follows:

"A. [W]ith the bus to the right of the truck and the truck turning in this manner (indicating), with the bus moving ahead the impact would be on the

left (right?) side of the truck and the left corner of the bus. Moved to this position (indicating) the point of impact would be more to the left of the center of the bus and on the right corner of the truck, and this would be the same, only it would be further to the right on the bus.

\* \* \* \* \* \*

"Q. Now, Mr. Packer, referring to the exhibits, the photographs which I have placed here on this board, which shows the damage to the bus where it came into contact with the right rear of the truck, do those photographs indicate to you the location of the vehicles in the street when the point of impact occurred between them? A. This photograph indicates that the bus was to the right of the right rear corner of the truck (indicating).

\* \* \* \* \* \*

"Q. \* \* \* Please tell the jury in your opinion could the damage, that you see in this photograph as it appears on the front of the bus, have occurred if the bus was directly behind the truck?

\* \* \* \* \* \*

"A. In the event the bus was following directly behind the truck and the bus was struck on this corner, that corner would have to have completely cleared the rear of the truck. To move this bus over and move it up and make a left turn could have brought him to the point of impact as the photograph shows (illustrating)."

Plaintiff's contention, as stated in his brief, is that: "The court committed reversible error when, over the objection of plaintiff, it permitted Winfield C. Packer to testify: (a) where in his opinion plain-

tiff's truck began to make its turn; (b) where in his opinion the point of impact occurred." In so contending, plaintiff, although citing numerous additional cases,[1] places main reliance upon the cases of Hamre v. Conger, 357 Mo. 497, 209 S.W. 2d 242; Chester v. Shockley, Mo., 304 S. W.2d 831; and Duncan v. Pinkston, Mo., 340 S.W.2d 753. In each of those cases consideration was given to the admissibility into evidence of an opinion of a police officer as to the point of impact of the vehicles involved, such opinion being based upon the location of debris found at the scene. In each case the court, either directly or by reference to other cases, held that a jury, given the facts in evidence, would be as capable of forming a well-founded opinion of the location of the point of impact as the officer, for the reason stated in Hamre v. Conger, supra, 209 S.W.2d 242, loc. cit. 249: "Whatever value the *location* of the debris or the *center* of the debris falling from two motor vehicles upon impact may have upon determining the point of impact is not, in our opinion, a proper subject for expert or opinion evidence. In this age of motor vehicles, knowledge upon such subject is not something not possessed by the ordinary person, hence the opinion evidence of Patrolman Harrison was incompetent, since it invaded the province of the jury."

Prior to determination of the merits of the assignment here made by plaintiff, two matters should be noted: First, plaintiff himself paved the way for admission of opinion evidence as to "point of impact" when his own witness, Police Officer Ferguson, upon direct examination, was permitted to testify at some length as to the point upon the pavement at which the impact occurred, specifically basing his conclusion (a) upon the "dirt" by him there found and (b) the point at which the skid marks (attributed by the witness to the dual wheels

1. Adams v. Carlo, Mo.App., 84 S.W.2d 682; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601; Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S.W.2d 873; Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536;

Pulse v. Jones, Mo., 218 S.W.2d 553; Ensminger v. Stout, Mo.App., 287 S.W. 2d 400; Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617; Clear v. Van Blarcum, Mo.App., 241 S.W. 81.

of the truck) began. Second, as we interpret the testimony of defendant's witness, Packer, he did not undertake to point out or to state that the impact occurred at any particular point upon the pavement. Rather was his testimony directed to the proposition that, taking into consideration the evidence of plaintiff as to the relative positions of the two vehicles immediately prior to and at the time of their collision, considering that evidence in conjunction with the "turning radius" of the truck and the photographic evidence showing the place on each of the vehicles where it came into contact with the other, the collision could not have occurred in the manner testified by plaintiff; and that, taking into consideration the testimony of defendant's bus driver as to the relative positions of the vehicles at said time and considering it in conjunction with the other aforesaid factors, the collision could have occurred as defendant contended.

The cases upon which plaintiff relies shed little, if any, light upon the problem here presented. In those cases, the facts at hand were such that a jury possessed of the knowledge of the ordinary man of that time could as well determine the "point of impact" as any other person, however expert he might be. In the instant case, the basic fact issue was: Did defendant's bus, operating immediately in the rear of plaintiff's vehicle, overtake and run into plaintiff's truck? Or did plaintiff's truck, operating to the left and in front of defendant's bus, suddenly turn in front of it? The witnesses of the respective parties gave conflicting versions as to the relative positions and movements of the vehicles as they approached and came into collision. If the facts in evidence were such that the ordinary juror possessed of the knowledge common to his time could with reasonable accuracy determine which of these versions was the more accurate, then expert opinion on the subject would constitute an unwarranted invasion of the jury's province. But, if the facts in evidence were such that expert opinion, based upon technical knowl-

edge or training not possessed by the ordinary juror, would be of aid in that respect, then the admission of such evidence was proper. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 606–607.

■ The question of the qualification of a witness as an expert in the field concerning which his testimony is sought and the necessity for admission of expert testimony in a given situation rests in the first instance in the sound discretion of the trial court, and its decision in those respects is not to be set aside in the absence of showing of an abuse of discretion. Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W.2d 122, 130; Capra v. Phillips Investment Co., Mo., 302 S.W.2d 924, 931; Superior Ice & Coal Co. v. Belger Cartage Service, Inc., Mo., 337 S.W.2d 897, 906.

■ In this case plaintiff does not question the qualification of the witness to testify as an expert on the phases of the case here in issue. Neither does he contend that the testimony was not relevant and material. Indeed, in his reply brief, plaintiff admits: "It is true that mathematically and mechanically he (Packer) demonstrated how the accident could or could not have occurred but careful examination of the record reveals that his testimony was well calculated to and did achieve one primary purpose— to give opinion as to where in the street the point of impact occurred—and the term 'point of impact' was referred to continuously in the questions of Packer on direct examination." We have concluded, however, that, under the circumstances here shown, we cannot with conviction say that the ordinary juror would be possessed of knowledge of the course plaintiff's truck (having a turning radius of 27 feet) would pursue along the highway in turning into the driveway from points 15 or 20 feet south of the driveway entrance, computed respectively from the two lanes of traffic in controversy, and, thereafter, upon consideration of the point at which each vehicle came into contact with the other, reckon the mathematical and mechanical

probability of the accuracy of the conflicting versions of the parties as to the manner in which the collision was produced. Consequently, we cannot convict the trial court of error in admitting such evidence.

The judgment is affirmed.

All concur.